UNITED STATES *v.* THE A. S. ALOE Co. (No. 3556)[1]

United States Court of Customs and Patent Appeals, December 19, 1932

*Charles D. Lawrence*, Assistant Attorney General (*William Whynman, Hugo Geisler*, and *Ralph Folks*, special attorneys, of counsel), for the United States.
*Puckhafer, Rode & Tompkins* (*J. Stuart Tompkins* of counsel) for appellee.

[Oral argument October 11, 1932, by Mr. Folks and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This case is an appeal by the United States from the judgment of the United States Customs Court, First Division, holding certain alleged chemical and scientific articles to be dutiable at 65 per centum

[1] T. D. 46111.

ad valorem under paragraph 218 (b) of the Tariff Act of 1930, and thus sustaining the protest of the appellee, importer, directed against the collector's classification of the merchandise under paragraph 218 (a) of the same act at 85 per centum ad valorem. A number of claims were made in the protest, which claims are not pressed here, the importer contending only that the classification of the merchandise under paragraph 218 (b) by the court below was correct.

The article in dispute is represented by Exhibits 1 and 2 and is referred to as a centrifuge sedimentation tube, is about four and one-half inches long, and made of blown glass; at the top it has extending rings designed to hold the tube in position in a centrifugal machine which is used to apply centrifugal force to the contents of the tube; from the ring the article tapers slightly until a point about two-thirds of the length of the same is reached, when a very decided taper begins, which extends to the small rounded and closed end. Exhibit 2 contains graduation marks and numbers; Exhibit 1 is plain.

The record shows that the articles are used in connection with a centrifugal machine which is made up of three spiral worm gears in mesh, operated by hand power. At the top of the rotating spindle are two extending arms forming a T. At each end of the horizontal bars or arms there is an opening or ring for the holding of the centrifuge tubes. As the machine rotates at the rate of about 2,000 revolutions per minute the solids are deposited on the bottom of the glass articles, which, while being rotated, assume a horizontal position with the loose or small ends projecting away from the machine.

The evidence shows that these tubes are specially constructed for this machine and differ in make and use from the ordinary test tube and can not be used interchangeably with test tubes. They are used almost exclusively for making urinary analyses and are sold by the sellers of surgical instruments and supplies. They are used by doctors in private practice. They are also sold to hospitals for use by doctors there. The testimony shows that their use is distinguished from the use of test tubes by the fact that the liquid tested is collected and held in test tubes and is then poured from the test tubes into the centrifuge tubes.

The pertinent portions of the two provisions under consideration follow:

PAR. 218 (a). Biological, chemical, metallurgical, pharmaceutical, and surgical articles and utensils of all kinds, including all scientific articles, and utensils, whether used for experimental purposes in hospitals, laboratories, schools or universities, colleges, or otherwise, all the foregoing (except articles provided for in paragraph 217 or in subparagraph (e)), finished or unfinished, wholly or in chief value of glass, 85 per centum ad valorem; * * *.

(b) Tubes (except gauge glass tubes), rods, canes, and tubing, with ends finished or unfinished, for whatever purpose used, wholly or in chief value of glass, 65 per centum ad valorem; * * *.

The importer claims that the article is not a scientific article, since it is not used in pure science and, therefore, not dutiable under paragraph 218 (a), and cites *United States* v. *Chesterton Co. et al.,* 15 Ct. Cust. Appls. 175, T. D. 42232; *O. G. Hempstead & Son* v. *United States,* 16 Ct. Cust. Appls. 427, T. D. 43173; and *W. L. Conover* v. *United States,* 17 C. C. P. A. (Customs) 324, T. D. 43743. Appellee further contends that the articles at bar are tubes within the common meaning and within the meaning of that word as used in paragraph 218 (b) and are dutiable thereunder.

The Government contends that the articles are scientific articles used in applied science as distinguished from pure science, citing *W. L. Conover* v. *United States, supra.* The Government argues that analyzing liquids and separating the light liquids from the heavier is scientific work and urges that the merchandise is dutiable under that portion of paragraph 218 (a) reading—

including all scientific articles, and utensils, whether used for experimental purposes in hospitals, laboratories, schools or universities, colleges, or otherwise.

We think the decision in this case is controlled by the decision in *United States* v. *E. H. Sargent & Co. (Inc.),* 20 C. C. P. A. (Customs) 172, T. D. 45774, which decision had not been rendered when the court below rendered the judgment now being reviewed.

In that case we had before us articles known as Bunsen tubes, Roehrig tubes, and absorption tubes, all of which were held to be more than tubes as that term is used in paragraph 218 (b), now under consideration. There it was conceded that the articles fell within the scope of the designation "chemical" or "scientific," but it was contended there by the importer that the provision for tubes in paragraph 218 (b) was a more specific one for the merchandise. In the case at bar it is not admitted that the merchandise is described in paragraph 218 (a) as a scientific article. No denial is made, however, that it is used in chemistry and science. In the *Sargent* case, *supra,* we said:

It is our view that the word "tubes," as used in said paragraph 218 (b), must be given its common meaning, and if the articles represented by Exhibits 1 to 4, inclusive, are nothing more than tubes, the decision of the court below was correct, regardless of the use for which the articles were designed. In other words, a tube may be a complete article designed for a particular use, and yet come within paragraph 218 (b).

On the other hand, we are of the opinion that, if the articles are more than tubes, they can not be classified under said paragraph 218 (b) but should be classified under paragraph 218 (a).

We have little difficulty with Exhibits 1, 2, and 3. We think the merchandise represented by these exhibits was properly classified by the collector under paragraph 218 (a). It is more than glass tubes. Each of the articles has a function other than that performed by a tube as that term is ordinarily understood.

Exhibit 4 is somewhat unlike the other articles, in so far as both ends are open and the portions of it that are between the globular formations, and the portions

at the ends, would seem to respond to the ordinary definition of a tube. The round globular formations, however, are not tubular in form nor do they perform the ordinary tube function. It is obvious that the globular formations are designed for the purpose of permitting the accumulation of gas therein or for purposes other than for the conveyance of something from one place to another. The device is used in scientific experimentation or scientific work to accomplish certain purposes which are not accomplished by the use of a mere tube, such as is provided for in paragraph 218 (b). The merchandise represented by Exhibit 4 should be classified with that represented by Exhibits 1, 2, and 3 under paragraph 218 (a).

In that case dictionary definitions were quoted as follows:

The word "tube" is defined in Funk & Wagnalls' Standard Dictionary as follows:

A long, hollow cylindrical body, as of wood, metal, rubber, or glass, generally used for the conveyance of something through it, but often as a receptacle for holding something; a pipe.

Webster's New International Dictionary defines the word "tube" as—

1. A hollow cylinder, of any material, to convey liquids or gases or for some other purpose; a pipe; as, a fire tube; a water tube; a condenser tube.
· 2. Specif.: a. Something with a tube or tubelike part as its chief feature, as a gun or a telescope. * * *

The correctness of the following sentence in the above-quoted expression has been challenged on the ground that the phrase "for the conveyance of something from one place to another" narrows the common definition of the term "tubes." It must be remembered that that expression was used in connection with a glass article with globular formations which functioned in the separation and accumulation of gases, and if the dictionary definition of a tube is a tubular or hollow cylindrical body used for the purpose of conveying something through it and also for holding something, it would not change the result as to Exhibit 4 in the *Sargent* case, *supra*.

The articles involved in this appeal, like those involved in the *Sargent* case, *supra*, are more than tubes. A part of the article is in tubular form and it probably has acquired, in trade and commerce, the name "centrifuge tube." In the *Sargent* case, *supra*, the articles had acquired the names of Bunsen tubes, Roehrig tubes, and absorption tubes, and yet we held them to be more than the tubes provided for in paragraph 218 (b). If we were right in our conclusion in the *Sargent* case we are equally justified in coming to the same conclusion in the case at bar, that is to say, the article, a centrifuge tube, is not a tube within the meaning of paragraph 218 (b) since it does more and is designed for a purpose other than those which may be attributed to tubes within the common understanding. It has nowhere been suggested in the argument of this case that this article should be classified as tubes merely because it is called a centrifuge tube. X-ray tubes and radio tubes are called tubes, but no one contends that they are provided for in paragraph 218 (b).

It is conceded on all sides that for this particular importation to be dutiable under paragraph 218 (b) it must meet the common definition of "tubes" as that word is ordinarily understood and not as the word "tube" is used when applied to various articles which are more than tubes within the common meaning. It was conceded that Exhibit 2 and Exhibit 3 in the *Sargent* case, *supra*, were Roehrig tubes, and yet this court was unanimous in holding that on account of the faucets and the presumed use of the tubes they did not respond to the common definition of the term "tubes" in paragraph 218 (b) and, therefore, were not dutiable thereunder.

For the same reason the merchandise at bar is not tubes. The articles are not tubular in shape and they do not perform the function of tubes. They are not designed for the purpose of conveying something through them or as a mere holder of something. They are designed to be used, and are exclusively used, as an article or utensil in which and with which is performed a definite chemical analysis, and since it is the article with which the definite chemical operation is performed it is a chemical article and more than a tube.

Moreover, it would seem incongruous to classify articles like those at bar as mere tubes along with rods, canes, and tubing, and class Bunsen tubes, Roehrig tubes, and absorption tubes under paragraph 218 (a). For tariff purposes they should go together.

Paragraph 218 (a) and paragraph 218 (b) have resulted in the Tariff Act of 1930 from a change in and a division of the first part of paragraph 218 of the Tariff Act of 1922. Regardless of what effect the change in language and form of the provisions covering this class of merchandise might be given as affecting certain merchandise, as we view it, it can have little, if any, effect on our conclusions here. It is to be noted that the chief change resulting from the division of a portion of the old paragraph into two subdivisions is the fact that in the act of 1922 the expression was—

biological, chemical, metallurgical, pharmaceutical, and surgical articles and utensils of all kinds, including all scientific articles, utensils, tubing and rods,

while in the new divided paragraph "tubing and rods" is taken out of subdivision (a) and a new subparagraph is made which says:

(b) Tubes (except gauge glass tubes), rods, canes, and tubing, with ends finished or unfinished, for whatever purpose used, wholly or in chief value of glass, 65 per centum ad valorem; * * *.

Tubing and rods under the old paragraph had to have the qualities of the first part of the paragraph. In *United States* v. *Chesterton Co. et al.*, *supra*, it was held that the tubing must be scientific tubing, notwithstanding the fact that the paragraph included the phrase—

whether used for experimental purposes in hospitals, laboratories, schools or universities, colleges, or otherwise.

It seems to us that by the removal of the phrase from subsection (a) and the creation of subsection (b) it was the intent of Congress, first, to include certain tubes and other articles thereunder which did not have a scientific character, and, second, to include canes and finished tubes as distinguished from what might be held to be tubing or material from which tubes were made. Certainly, whatever changes were made, instead of indicating an intent to include a chemical article of the character at bar within subdivision (b), the indication, if any, would be to the contrary. A lower rate of duty was made on tubes in (b) than on chemical, surgical, or scientific articles in (a).

We conclude that the merchandise involved in this appeal is aptly described in paragraph 218 (a) and not provided for under subdivision (b), and the judgment of the United States Customs Court is *reversed.*

### DISSENTING OPINION

HATFIELD, Judge: The opinion of the majority of the court quotes from, and follows, the decision of this court in the case of *United States* v. *E. H. Sargent & Co. (Inc.)*, 20 C. C. P. A. (Customs) 172, T. D. 45774. I dissented in that case from that part of the decision holding that Exhibits 1 and 4 were something more than glass tubes. As to Exhibit 4, I concurred in the dissenting opinion of Judge Lenroot. As to Exhibit 1, which consisted of a—

long, hollow, graduated, cylindrical glass container, uniform in diameter, about 21 inches in length, and open at one end and closed at the other, * * * used for holding, conveying, and, of course, for measuring liquids, "

I stated my views as follows:

As I understand it, the majority opinion holds that the articles represented by Exhibit 1 are not tubes, because, due to the graduations thereon, they are used for *measuring,* as well as for holding and conveying liquids. Such a holding, in my opinion, too narrowly applies the definition to the term "tubes." The articles represented by Exhibit 1 are not only glass tubes but they are known and used as such.

*     *     *     *     *     *     *

It will be observed that all glass tubes, except "gauge glass tubes," are covered by those provisions and are dutiable thereunder regardless of the purpose or purposes for which they are used. The Congress having made one express exception to the operation of those provisions, I am of opinion, considering the context, that no other exception was intended. *Expressio unius est exclusio alterius.* Accordingly, glass articles conforming to the dictionary definitions of the term "tube," except such as are "gauge glass tubes," are covered by those provisions and are dutiable thereunder.

In that case Exhibit 1 was graduated and was called a "Bunsen tube." It had no other peculiarities.

In the opinion of the majority of the court in the case at bar it is stated, in describing the involved glass articles, that one is graduated

and the other plain, and that each of them has an "extending ring" at the top for the purpose of holding it in position in a centrifugal machine.

In those respects they do not differ in the slightest degree from the ordinary test tubes which have similar so-called extending rings so that they may be suspended in the ordinary test-tube rack. Furthermore, test tubes may or may not be graduated, as hereinafter pointed out.

The involved articles are apparently uniform in diameter from the rings at the top to about two-thirds of their length, from which point they taper to rounded and closed ends. They are used in a centrifugal machine for making urinalyses. Exhibit 1 is not graduated, whereas Exhibit 2 is.

It is stated in the majority opinion that the involved centrifuge tubes—

differ in make and use from the ordinary test tube and can not be used interchangeably with test tubes.

The witness Frank W. Strait testified that a—

centrifuge tube might be used as a test tube, but a test tube could not be used as a centrifuge tube.

It is said in the majority opinion that the involved tubes ought not to be classified as tubes simply because they are known as "centrifuge tubes." I am in accord with that view. However, in my opinion, they ought not to be refused classification as glass tubes under paragraph 218 (b) merely because they are known as centrifuge tubes and are used for scientific purposes, any more than a test tube should be classified or refused classification under paragraph 218 (b) merely because it is known as a test tube and is used for the purpose of making chemical and other tests.

A "test tube" is defined in Webster's New International Dictionary as—

*Chem.* A tube for simple tests, usually a plain tube of thin glass closed at one end, but sometimes having a foot, bulb, graduated scale, or other modification.

It would seem to be obvious that if the "Bunsen tube" in the *Sargent* case, *supra*, is not a glass tube within the provisions of paragraph 218 (b) because it is known as a "Bunsen tube" and is graduated, and if the tubes in the case at bar are not glass tubes within the meaning of the provisions of paragraph 218 (b) because they taper at one end—one of them being graduated and the other one plain— and are called centrifuge tubes, it would seem fair to inquire whether a test tube, having a graduated scale, or a "foot, bulb, * * * or other modification," could be classified under the provisions in question. If it could not be so classified, and it certainly could not under the decision of this court in the *Sargent* case, *supra*, which is followed

by the majority of the court in the case at bar, then it would seem to follow that only *plain* glass tubes, *uniform* in diameter, are classifiable under the provisions in question. Such a holding, it seems to me, does violence to the *eo nomine* designation rule, which, in the absence of statutory words of qualification or limitation or proof of a contrary commercial custom, requires that an *eo nomine* designation be—

applied in its broadest significance, including every kind and class of merchandise properly referable thereto, either directly or as a species, the genus of which is embraced within the particular tariff nomenclature. (*Schade & Co.* v. *United States*, 5 Ct. Cust. Appls. 465, T. D. 35002, and cases cited therein.)

The only limitation in paragraph 218 (b) is as to the material of which the tubes are composed. Furthermore, the Congress has broadened the involved provisions by including therein all glass tubes, regardless of the purpose or purposes for which they are used, and thus has prevented their removal from such provisions by the application of the doctrine of use.

In the case of *United States* v. *Chesterton Co. et al.*, 15 Ct. Cust. Appls. 175, T. D. 42232, this court held that paragraph 218 of the Tariff Act of 1922, so far as it covered tubes or tubing, applied only to scientific tubes and tubing. The decision in that case was referred to by the Tariff Commission in the Summary of Tariff Information, 1929, when the provisions in question were before the Congress for consideration. Therefore, Congress, of course, had not only constructive, but actual, knowledge of the holding of this court that paragraph 218 of the Tariff Act of 1922, so far as it applied to glass tubes or tubing, was limited to scientific tubes and tubing. With that information before it the Congress, in the Tariff Act of 1930, deliberately removed glass tubes and tubing from the provisions for scientific articles contained in paragraph 218 (a) and provided for them in paragraph 218 (b) at an ad valorem rate of duty 20 per centum less than that provided for scientific articles in paragraph 218 (a). Not only did it do that, but, excepting gauge glass tubes only, it provided that they should be so classified, regardless of the purposes for which they were, or might be, used.

In the case of *United States* v. *Schaeffer & Budenburg Corp.*, 18 C. C. P. A. (Customs) 338, T. D. 44587, this court, in holding that glass tubing used in making thermometers was dutiable as scientific tubing under paragraph 218 of the Tariff Act of 1922, said:

* * * It is a matter of common knowledge that glass tubing, of various lengths and sizes, is used in scientific work in connection with rubber tubing and other appliances, to make scientific instruments and to perform scientific experiments. The fact that such tubing can not be so used by itself does not render it any the less scientific tubing.

Accordingly, the mere fact that the involved tubes are not, or can not be, used by themselves, but are used generally or exclusively in a

centrifugal machine does not remove them from the glass-tube provisions of paragraph 218 (b).

For the reasons herein stated, I am of opinion that the court below reached the right conclusion and that its judgment should be *affirmed*.

CONCURRING AND DISSENTING OPINION

LENROOT, Judge, specially concurring and dissenting: I concur in the conclusion reached by the majority with respect to the merchandise represented by Exhibit 1 and dissent as to the merchandise represented by Exhibit 2.

This case involves the same questions that were considered by the court in the case of *United States* v. *E. H. Sargent & Co. (Inc.),* 20 C. C. P. A. (Customs) 172, T. D. 45774, and my views are expressed in my concurring and dissenting opinion therein.